IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 15-4445 |
| CHENET LAROSE, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                **APRIL  12 , 2018**

Presently before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 37.) For the following reasons, the Motion will be granted in part, and denied in part.

**I.    BACKGROUND**

In this commercial piracy action, Plaintiff J & J Sports Productions, Inc. alleges that Defendants LaRose Club, Inc. d/b/a/ LaRose Catering Ballroom, a jazz club located in the Germantown area of Philadelphia, Pennsylvania, and Wynne LaRose, one of its officers, unlawfully intercepted and published Plaintiff's program, "Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program" (the "Floyd Mayweather Program") in violation of federal law.[1] Plaintiff seeks summary judgment on Count 1 of its Complaint, which asserts a claim for violation of 47 U.S.C. § 605.

**A.    Factual Background**

The Floyd Mayweather Program was telecast nationwide on September 13-15, 2013. (Pl.'s Facts 1, ECF No. 37-2; Defs.' Resp. 2, ECF No. 39; Gagliardi Aff. ¶ 3, ECF No. 37-4.)

---

[1] Originally, the Complaint named Chenet LaRose as a Defendant. However, on November 4, 2016, a Stipulation was jointly filed by the parties, dismissing Chenet LaRose from the case. (ECF No. 26.) Defendants represent that his dismissal related to a personal bankruptcy.

Plaintiff was granted the exclusive commercial distribution rights to the Floyd Mayweather Program. (Gagliardi Aff. ¶ 3 & Ex. 1.) Defendant LaRose Club, Inc. owns LaRose Catering Ballroom, which is a jazz club located at 5531 Germantown Avenue, Philadelphia, Pennsylvania. (Pl.'s Facts 2; Gagliardi Aff. Ex. 2.) Defendant Wynne LaRose and her husband Chenet LaRose are officers of Defendant LaRose Club, Inc., which in turn owns LaRose Catering. (Pl.'s Facts 2; Defs' Resp. 2.) The Pennsylvania Liquor Control Board License for LaRose Catering lists Wynne LaRose as a stockholder, director, and secretary/treasurer" of the company. (Riley Decl. Ex. 5.) However, Wynne LaRose states that she has no knowledge of the day-to-day operations of LaRose Catering, and does not manage the staff. (Wynne Admissions Resp. ¶ 1, Riley Aff. Ex. 3.)

When Plaintiff began to see decreases in the sales of their proprietary programming, they "embarked on a nationwide program to police [its] signals for the purpose of identifying and prosecuting commercial establishments that pirate [its] programming." (Gagliardi Aff. ¶ 5.) As part of this endeavor, Plaintiff hired "auditors and law enforcement personnel to detect and identify signal pirates." (*Id*. ¶ 6.) LaRose Catering was one such alleged "signal pirate." (*Id*.) Commercial establishments like LaRose Catering that wished to broadcast the Floyd Mayweather Program were given the option to pay Plaintiff a commercial sublicense fee. (*Id*. ¶ 8.) For an establishment like LaRose, the sublicense fee would have been $2,200. (*Id*.) It is undisputed that LaRose Catering did not pay the sublicense fee to Plaintiff.

At approximately 12:30 a.m. on September 15, 2013, one of Plaintiff's retained auditors, Deirdre Lorenzano-Bavonese, went to LaRose Catering and observed that the jazz club was broadcasting the Floyd Mayweather Program. (Auditor Aff. 1, Def.'s SJ Mot. Ex. 2, ECF No. 37-5.) The auditor observed that the program was playing on one television, and that there were

approximately twenty people inside the jazz club.  The admission or cover charge to enter the club was $10.  (*Id.*)  The program was being shown by the manager of the jazz club at that time, Kim Ryan, who had organized a private event at the jazz club.  (LaRose Admissions Resp. ¶ 13, Riley Aff. Ex. 4.)  Kim Ryan collected and retained all of the proceeds from the event.  (*Id.* ¶¶ 19-20.)  All patrons at the jazz club during the broadcast were guests of Kim Ryan, and were not "patrons of the club."  (*Id.*)  LaRose Catering did not sell any food, alcoholic beverages, or non-alcoholic beverages during the broadcast.  (*Id.* ¶¶ 37, 28.)  Defendants did not inform patrons or employees of the jazz club that the Program was going to be broadcast since it was a private event organized by Kim Ryan.  (*Id.* ¶¶ 40-42.)  Kim Ryan allegedly told Chenet LaRose prior to the broadcast that the Floyd Mayweather Program was properly included in Defendants' cable subscription.  (Defs.' Resp. 4.)

Wynne LaRose states that she did not personally order, download, or intercept the Floyd Mayweather Program, and had no knowledge with respect to its broadcast at LaRose Catering.  (Wynne Admissions Resp. ¶ 2.)  She further states that she is not involved in the day-to-day operations of the jazz club, was not present at the club on the day of the broadcast, and was not informed that the Floyd Mayweather Program would be broadcast.  (*Id.* ¶¶ 1, 27-29, 33.)

**B.     Procedural History**

On August 10, 2015, Plaintiff filed a Complaint.  The Complaint asserts two counts.  Count 1 alleges that Defendants violated 47 U.S.C. § 605.  Count 2 alleges that Defendants violated 47 U.S.C. § 553.  (Compl.)  Both statutory provisions prohibit the unauthorized interception and exhibition of broadcasts.  The main difference between the two is that section 605 addresses the interception of satellite transmissions, whereas section 553 applies "once a satellite transmission reaches a cable system's wire distribution phase."  *TKR Cable Co. v. Cable*

*City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001). A plaintiff may seek relief under only one of these statutes. *See J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *2 n.6 (E.D. Pa. May 18, 2015) ("In the Third Circuit, a defendant cannot be liable under both § 553 and § 605."); *see also TKR*, 267 F.3d at 205. Despite making claims under both statutory provisions, Plaintiff now seeks summary judgment with respect to Count 1 only, the claim asserted under Section 605. LaRose Catering has a DirectTV account, which is a satellite cable provider. Therefore, Section 605 applies. Section 553 does not. Accordingly, Count 2 will be dismissed.

On April 5, 2017, Plaintiff filed the instant Motion for Summary Judgment. (Pl.'s Mot. SJ, ECF No. 37.) On April 25, 2017, Defendants filed a Response to the Motion. (Defs.' Resp., ECF No. 39.) On May 5, 2017, Plaintiffs filed a Reply. In October of 2017, the case was reassigned to this Court. (ECF No. 43.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id.* The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). Courts may consider answers to discovery responses, including answers to requests for admissions, when determining whether summary judgment is appropriate. *See* Rule 56(c)(1)(A). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. DISCUSSION

Plaintiff argues that it is entitled to judgment for Defendants' violation of Section 605(a). In particular, Plaintiff contends that it has presented undisputed evidence that (1) the Floyd Mayweather Program was intercepted or received by Defendants and broadcast at LaRose Catering on the evening of September 15, 2013, and (2) Defendants had no authority to broadcast the Program because they did not pay Plaintiff the sublicense fee. Plaintiff seeks judgment against corporate Defendant LaRose Club Inc. and against individual Defendant Wynne LaRose based on a theory of vicarious liability. Plaintiff requests statutory damages in

5

the amount of $7,300, and enhanced statutory damages in the amount of $30,000. Plaintiff also requests reimbursement of costs and reasonable attorney's fees.[2]

**A.      Liability Against Corporate Defendant LaRose Club, Inc.**

Plaintiff seeks judgment against Defendant LaRose Club, Inc. on its claim under Section 605(a). Generally, Section 605 prohibits intercepting and transmitting encrypted satellite cable programming. 47 U.S.C. § 605(a).[3]

To prove a violation of Section 605(a), Plaintiff must show that Defendants "(1) intercepted a broadcast; (2) were not authorized to intercept the broadcast; (3) showed the broadcast to others." *Joe Hand Promotions, Inc. v. Murray*, No. 15-5631, 2016 WL 3903205, at *3 (E.D. Pa. July 18, 2016) (citations omitted). Based on the statutory language, courts have concluded that a violation of Section 605 is a strict liability offense. *Id.* (noting that a defendant's intent is only relevant as to damages); *J & J Sports Prods., Inc. v. Chauca*, No. 14-6891, 2015 WL 7568389, at *3 (E.D. Pa. Nov. 25, 2015) (citing cases and stating that "[t]his lack of an intent element has caused many courts to conclude that it operates as a strict liability

---

[2] Plaintiff has filed over seventy-five similar cases in this District alone, through its attorney, Thomas P. Riley, Esquire. Many of the pleadings in these cases are nearly identical to the pleadings filed in this case.

[3] The statute specifically states that:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605 (a).

statute"); *J & J Sports Prods., Inc. v. Broadnax*, No. 13-5358, 2015 WL 1256040, at *4 (E.D. Pa. Mar. 18, 2015) (stating that violations of section 605 are strict liability offenses); *J & J Sports Prods., Inc. v. Gonzalez*, No. 12-6313, 2013 WL 6022225, at *3 (E.D. Pa. Nov. 14, 2013) (same); *see also DirecTV v. Crespin*, 224 F. App'x 741, 757 (10th Cir. 2007) (noting that "[Section] 605(a) does not have an intent requirement").

In support of its Motion, Plaintiff has submitted the Affidavit of its auditor, Deidre Lorenzano-Banoese; a Declaration from its legal counsel, Thomas P. Riley, Esquire; and an Affidavit from its President, Joseph M. Gagliardi. The Auditor states in her Affidavit that she personally attended the jazz club at approximately 12:30 a.m. on September 15, 2013. While there, she observed that the Floyd Mayweather Program was being displayed on one television, that there were approximately twenty people inside the club, and that individuals paid a $10 cover charge that evening. (Auditor Aff. 1.) Attached to Counsel's Declaration were Plaintiff's requests for admissions from Wynne LaRose and from LaRose Catering, Inc., as well as Defendants' responses. According to Defendants' Responses to Admissions, Defendants do not dispute that the Floyd Mayweather Program was played at the jazz club on the evening of September 15, 2013. (LaRose Admissions Resp. ¶¶ 13.) It is also not disputed that neither LaRose Catering, Inc., nor Wynne LaRose paid a licensing fee to Plaintiff for the rights to broadcast the program. (*Id*. ¶ 3.)

Based on this evidence, we are satisfied that Plaintiff has introduced sufficient evidence supporting the elements of a Section 605(a) violation. The evidence shows that LaRose Catering intercepted a broadcast of the Floyd Mayweather Program using their Direct TV satellite service. The evidence also shows that Defendants were not authorized to broadcast the program as they did not pay the sublicensing fee. Because Section 605 is a strict liability statute, it does not

7

matter that Defendants did not intend to broadcast the program. Nor does it matter that they did not authorize the broadcast by their employee Kim Ryan. The jazz club's satellite service was used to illegally intercept a program, and an employee of the jazz club played that program at the establishment. Plaintiff has established a claim under Section 605(a) against the corporate Defendant, LaRose Catering, Inc.

### B. Individual Liability Against Wynne LaRose

Plaintiff also seeks judgment against individual Defendant Wynne LaRose. Specifically, they seek to hold Wynne LaRose vicariously and jointly liable with the corporate Defendant LaRose Club, Inc. Wynne LaRose and her husband, Chenet LaRose, are officers of LaRose Club, Inc., which in turn owns the jazz club LaRose Catering Ballroom. Wynne LaRose is designated as a "stockholder, director and secretary/treasurer" of LaRose Club, Inc. on the club's liquor license.

Individuals may be held vicariously liable for violations of Section 605(a) committed by their corporate co-Defendant. An individual defendant may be vicariously liable if she "(1) has the right and ability to supervise the violative activity, although [s]he need not actually be supervising, because [s]he need not know of the violative activity, and (2) has a direct financial interest in the violation, *i.e.*, financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity." *Cruz*, 2015 WL 2376290, at *4 (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 296 (E.D. Pa. 2014)).

The evidence in this record does not support a finding of vicarious liability. Wynne LaRose makes it clear in her responses to Plaintiff's request for admissions that she had no ability to supervise the violative activity. Specifically, she states as follows:

> I have no knowledge of any of the day to day, month to month, or year to year business operations of La Rose Club Inc. I do not manage the staff, I do not

8

> oversee the television set in the bar, I do not supervise the manager, bartenders, or waiters, and I had no knowledge whatsoever of the Event.

(Wynne LaRose Admissions Resp. ¶ 29.) The evidence also does not support a finding that Wynne LaRose received any financial benefits as a result of the intercepted broadcast. She did not receive any of the proceeds from the cover charges. (LaRose Admissions Resp. ¶¶ 13, 19.) In addition, according to LaRose Club Inc.'s responses to admissions, the jazz club that Wynne LaRose part-owned did not profit from the sales of alcohol or food during the broadcast of the Floyd Mayweather Program.

Plaintiff has offered no evidence to contradict Defendants' responses to the requests for admissions. Plaintiff could have engaged in additional discovery, including deposing Defendants, Kim Ryan, and/or others associated with the jazz club. It could have requested business records from the jazz club that showed profits earned on the evening that the Floyd Mayweather Program aired. Plaintiff chose to simply serve requests for admissions and rest its case on Defendants' Responses to those requests. Defendants' Responses contradict Plaintiff's position that Wynne LaRose should be held vicariously liable, particularly the response that she was not at all involved in the management and operation of the jazz club and did not realize any profits from the broadcast of the Floyd Mayweather Program. Plaintiff argues that Wynne LaRose's position as an officer and shareholder of the jazz club requires vicarious liability. We reject this argument. *See Yakubets*, 3 F. Supp. 3d at 295-96 (concluding that that the second element of individual liability can only be met if the individual benefits from the broadcast and not simply because she is an officer or shareholder of the defendant corporation).

Accordingly, Plaintiff's request for summary judgment as to Defendant Wynne LaRose will be denied, and judgment will be entered in favor of Wynne LaRose.

### C. Damages

Finally, we must consider the damages against the corporate Defendant, LaRose Club, Inc. Plaintiff requests statutory damages in the amount of $7,300, and enhanced damages in the amount of $30,000. We first address Plaintiff's request for statutory damages.

Section 605 authorizes statutory damages of $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i). There is no dispute that this case involves one violation because the Floyd Mayweather Program was broadcast on one television at the jazz club. "[T]he aim of statutory damages is to estimate actual damages" and should generally be "a conservative figure that does not simply allow circumvention of the actual damages provision's proof requirement." *Yakubets*, 3 F. Supp. 3d at 280. A statutory damages award under Section 605 generally includes two categories of damages: "(1) the amount the violator would have paid had he or she paid for a license; and (2) the violator's profits to the extent they are attributable to the violation." *J&J Sports Prods., Inc. v. Allen*, No. 17-4046, 2018 WL 1307880, at *2 (E.D. Pa. Mar. 13, 2018) (citing *Cruz*, 2015 WL 2376051, at *5). Plaintiff requests that the Court also consider the statute's purpose to deter unlawful activity as a factor in statutory damages. This argument has been rejected by courts in this district. *See, e.g.*, *Yakubets*, 3 F. Supp. 3d at 275 ("While deterrence is a universal issue . . . deterrence as a factor is better considered under the enhanced damages rubric, which requires a showing of willfulness."); *Cruz*, 2015 WL 2376051, at *4 (citing cases).

Here, Plaintiff has provided no evidence to establish that LaRose Club, Inc. profited in any way from the broadcast of the Floyd Mayweather Program. The uncontested facts show that the jazz club's manager, who broadcast the program as part of a private event that she hosted, retained all of the proceeds. In addition, the jazz club did not sell any alcohol or food to bar

10

patrons during this private event. The sub-license for airing the Floyd Mayweather Program at LaRose Catering would have been $2,200. Accordingly, we will award statutory damages in the amount of $2,200 since this is the amount that Plaintiff would have been paid had the Program been legally broadcast.

Section 605 also allows for enhanced damages (not more than $100,000 for each violation) if the plaintiff can show that the interception and broadcast was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff has presented no evidence to demonstrate that Defendant LaRose Club, Inc. willfully intercepted this broadcast or that LaRose Club, Inc. realized a financial gain. Courts in this district require plaintiffs to show "the defendant's intentional signal interception as well as knowledge of or reckless disregard as to the unlawfulness of its signal interception." *Yakubets*, 3 F. Supp. 3d at 284-85; *J & J Sports Prods., Inc. v. Hackett*, 269 F. Supp. 3d 658, 664 (E.D. Pa. 2017) (adopting standard set out in *Yakubets*).

Plaintiff has not shown willfulness on the part of Defendant LaRose Club, Inc. The interception and broadcast of the Floyd Mayweather Program was accomplished solely by the manager of the jazz club, Kim Ryan, who in turn, assured co-owners Chenet LaRose and Wynne LaRose that the program was covered by the club's satellite subscription. Based on this, Defendant could not have had knowledge or a reckless disregard as to the unlawfulness of the signal interception. In addition, the record contains no evidence to support the allegation that Defendant intercepted the Program for commercial or financial gain. As noted above, Kim Ryan, and not Defendant, retained the proceeds from the $10 cover charge, and the jazz club did not realize a profit from any sales of liquor or food. Accordingly, Plaintiff's request for enhanced damages will be denied.

11

Finally, Plaintiff requests reimbursement of costs and reasonable attorney fees. When a plaintiff prevails on a claim under Section 605, the court "shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Counsel for Plaintiff will be granted the requested fourteen days to submit evidence of costs and reasonable attorneys' fees.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment will be granted in part, and denied in part. It will be granted as to Defendant LaRose Club, Inc. The Motion will be denied as to Defendant Wynne LaRose. Plaintiff is entitled to statutory damages in the amount of $2,200 against Defendant LaRose Club, Inc..

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**